IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 30, 2022 Session

## JOSHUA CLINT HOPPER v. OBION COUNTY SCHOOL SYSTEM

**Appeal from the Circuit Court for Obion County**
**No. CC-16-CV-26   Clayburn Peeples, Judge**
_____

**No. W2021-00805-COA-R9-CV**
_____

This is an interlocutory appeal from a personal injury case involving a minor who was struck in the eye by a mechanical pencil while attending an afterschool program. The trial court denied the school system's motion for summary judgment. The trial court granted the school system permission to seek an interlocutory appeal. Thereafter, the school system filed its application for permission to appeal, which we granted. We reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Christopher C. Hayden, Jackson, Tennessee, for the appellant, Obion County Board of Education.

W. Lewis Jenkins, Jr. and Dean P. Dedmon, Dyersburg, Tennessee, for the appellee, Joshua Clint Hopper.

## OPINION

### I.     FACTS & PROCEDURAL HISTORY

Joshua Clint Hopper ("Clint"), a minor at the time of the unfortunate incident in this case,[1] attended Hillcrest Elementary School, which was in the Obion County School System. Clint participated in an afterschool program called the Extended School Program which provided both childcare and homework assistance. On November 19, 2007, nine-

_____
[1] Clint was born in November 1997.

year-old Clint was struck in the eye by a mechanical pencil while attending the program.[2] A nine-year-old classmate, Jordan, was apparently flicking a pencil back and forth between her fingers when it flew into the air and hit Clint in the eye. Clint did not know if Jordan was just flicking the pencil back and forth or if she meant to throw it at him. Jordan stated that she did not intentionally throw the pencil. Rather, she had been flicking the pencil out of habit and it got away from her. She explained that it was an inadvertent move she did when she was concentrating on her homework. Therefore, Jordan believed that nothing could have been done to prevent it from happening.

At the time the incident occurred, the teacher was in the back of the classroom at his desk, which was located in a small room described as a "closet." The teacher did not observe the incident from his desk nor was he aware that the incident had occurred. According to Clint, the view of the classroom was obstructed by the walls of the closet and the position of the desk in the closet. He would later testify as follows:

Q: What's it obstructed by?

A: Because the closet is not in the center of the classroom and plus, you're back in the closet so you've got walls and whatever items are in the closet, plus the way the computer and the desk was is facing more toward the wall. It [isn't] . . . in the middle of the closet facing out. It's facing toward the wall.

Now, I'm not saying which way he was turned . . . . I'm not trying to say that. I'm just saying physically in the classroom, there wasn't any supervision.

Q: Okay. Where you were sitting that day, do you know if he could see that from the closet?

A: Not for sure. I don't know for a fact.

Although other students in the classroom observed the incident, they were unaware that Clint was seriously hurt. Jordan explained that she knew the pencil had hit Clint in the face, but she was unaware that it had specifically struck his eye. She also explained that Clint said, "Oww," and then they continued what they were doing before the incident. According to Clint, he went to the bathroom to check his eye, which continued hurting and watering, and he returned to the classroom to tell the teacher that he was going to the front office. However, the teacher did not recall Clint coming to him and stating that he needed

_____

[2] The record went back and forth regarding whether this incident occurred in 2006 or 2007. However, we can conclude that the incident occurred in 2007, because November 19, 2006, fell on a Sunday, which would have been a non-school day.

to go to the front office. Regardless, the teacher was unaware of the incident at the time because Clint did not tell him what had happened. As such, he was "shocked" to learn the following day that Clint had been injured. On his way to the front office, Clint passed another teacher in the hallway and asked her if his eye looked red. The teacher stated that his eye looked a little red, asked if he was okay, and then Clint continued to the front office. Upon arriving at the front office, Clint called his mother and was taken to the eye doctor. The incident resulted in multiple surgeries, home schooling, and ultimately the removal of his right eye. Before the removal of his eye, Clint dealt with constant problems with the eye and described the pain as "unbearable."

After reaching the age of majority, Joshua Clint Hopper ("Plaintiff") filed a complaint on June 21, 2016 based on the 2007 incident. The complaint alleged that Obion County School System ("Obion") and Obion County, Tennessee, were liable for their negligent failure to protect Plaintiff from his injuries.[3] In August 2016, Obion filed a motion to dismiss, motion to strike, and an answer. Thereafter, the depositions of both Plaintiff and Jordan were taken. Additionally, the depositions of the teacher, the former principal, and the former director of schools were taken. In April 2019, Obion filed a motion for summary judgment. Plaintiff then filed a response. The trial court held a hearing on the motion in November 2019. In July 2020, the trial court entered an order denying Obion's motion for summary judgment. The trial court fully incorporated by reference the transcript of the hearing on the motion and attached the transcript to its order.[4]

In August 2020, Obion filed a motion to revise the order denying its motion for summary judgment, or in the alternative, a motion for interlocutory appeal. The trial court held a hearing on the motion in November 2020. In July 2021, the trial court entered an order granting Obion's motion for interlocutory appeal. Thereafter, Obion filed its application for permission to appeal. This Court granted permission to appeal in August 2021.

## II.    ISSUES PRESENTED

Obion presents the following issue for review on appeal, which we have slightly restated:

---

[3] In February 2019, the trial court entered an order of voluntarily dismissal as to Obion County, Tennessee.

[4] Although "the transcript does shed some light on the apparent reason" for the trial court's ruling in favor of Plaintiff, it includes several asides about class reunions, transferring the court file, and whether the judge should recuse himself. *Field v. Ladies' Hermitage Ass'n*, No. M2013-02635-COA-R3-CV, 2014 WL 3729905, at *5 n.4 (Tenn. Ct. App. July 24, 2014). It is difficult to discern what substantive value the 30-page transcript added to the trial court's order denying the motion for summary judgment. Moreover, the order failed to state the legal grounds upon which the trial court denied the motion. *See* Tenn. R. Civ. P. 56.04 ("The trial court shall state the legal grounds upon which the court denies or grants the motion, which shall be included in the order reflecting the court's ruling.").

1.  Whether the trial court properly denied Obion's motion for summary judgment.

For the following reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion.

## III.  STANDARD OF REVIEW

We review a trial court's decision on a summary judgment motion de novo with no presumption of correctness. *Lemon v. Williamson Cnty. Schs.*, 618 S.W.3d 1, 12 (Tenn. 2021) (citing *Tatham v. Bridgestone Ams. Holding, Inc.*, 473 S.W.3d 734, 748 (Tenn. 2015)). "Summary judgment is proper where the 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Tenn. R. Civ. P. 56.04). Therefore, "[o]ur standard of review requires 'a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied.'" *Id.* (quoting *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015)).

## IV.  DISCUSSION

We begin by noting that this is an interlocutory appeal. *See* Tenn. R. App. P. 9. "The Court's review is limited to those questions clearly within the scope of the issue certified for interlocutory appeal." *Fisher v. Hargett*, 604 S.W.3d 381, 393 (Tenn. 2020) (citing *Funk v. Scripps Media, Inc.*, 570 S.W.3d 205, 210 (Tenn. 2019)). The certified issue on appeal is the one which Obion presents: whether the trial court incorrectly denied Obion's motion for summary judgment. However, Plaintiff presents his own issues concerning the elements of negligence that are within the scope of the certified issue, which we will consider to the extent necessary.

When asserting a negligence claim, "a plaintiff must establish (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate or legal cause." *Satterfield v. Breeding Insulation Co.*, 266 S.W.3d 347, 355 (Tenn. 2008) (citing *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006); *Draper v. Westerfield*, 181 S.W.3d 283, 290 (Tenn. 2005)). "[D]uty has become an essential element of all negligence claims, as well as a question of law to be determined by courts." *Id.* (citing *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 550 (Tenn. 2005); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). Therefore, Plaintiff's claim must fail if Obion did not owe him a duty.

We have explained that "[d]uty is the legal obligation a defendant owes to a plaintiff to exercise reasonable care in order to protect against unreasonable risks of harm." *Nickelson v. Sumner Cnty. Bd. of Educ.*, No. 01A01-9807-CV-00375, 1999 WL 767813,

at *2 (Tenn. Ct. App. Sept. 29, 1999); s*ee McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995). We have further explained that duty is "considered in relation to all the relevant circumstances, and the degree of foreseeability needed to establish a duty of care decreases in proportion to increases in the magnitude of the foreseeable harm." *Id.*; *see Pittman v. Upjohn Co.*, 890 S.W.2d 425, 433 (Tenn. 1994); *Doe v. Linder Constr. Co., Inc.*, 845 S.W.2d 173, 178 (Tenn. 1992). Additionally, "[t]he nature and scope of a person's duty in a particular situation is a question of law to be decided by the court." *Id.*; *see Blair v. Campbell*, 924 S.W.2d 75, 78 (Tenn. 1996); *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993).

In the context of duty, whether the risk of injury was foreseeable must first be established. *Landry v. Sumner Cnty. Bd. of Educ.*, No. M2019-01696-COA-R3-CV, 2020 WL 3550052, at *5 (Tenn. Ct. App. June 30, 2020). This Court has explained that foreseeability "has taken on paramount importance in Tennessee." *Marla H. v. Knox Cnty.*, 361 S.W.3d 518, 532 (Tenn. Ct. App. 2011) (quoting *Satterfield*, 266 S.W.3d at 365 (citations omitted)). "General foreseeability is now a threshold requirement in the duty analysis." *Id.* (citing *Giggers v. Memphis Housing Auth.*, 277 S.W.3d 359, 365 (Tenn. 2009)). Thus, the threshold issue in this case is whether this incident was generally foreseeable.[5] The answer to the question of foreseeability "is determined by examining whether 'a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom is owed a duty is probable.'" *Landry*, 2020 WL 3550052, at *5 (quoting *Downs ex rel. Downs v. Bush*, 263 S.W.3d 812, 820 (Tenn. 2008)).

This is not the first Tennessee case involving a minor who sustained an ocular injury while at school. In *Nickelson*, a minor sustained an eye injury when a classmate struck him in the eye with a metal ruler. *Nickelson*, 1999 WL 767813, at *1. Unlike the case at bar, the trial court granted summary judgment for the defendant. *Id.* On appeal, this Court explained that "teachers and local school districts are not expected to be insurers of the safety of students while they are at school." *Id.* at *2 (citations omitted). "However, teachers and other school personnel must conform to a standard of reasonable and ordinary care under the circumstances." *Id.* at *3 (citations omitted). Therefore, "the standard of care for school teachers and administrators is that of a reasonable person in such a position acting under the same or similar circumstances." *Id.* (citing *Roberts v. Robertson Cnty. Bd. of Educ.*, 692 S.W.2d 863, 870 (Tenn. Ct. App. 1985)).

The Court in *Nickelson* noted that several cases have found that the teachers were

---

[5] We note, however, that "[t]he role that the concept of foreseeability plays in the context of a court's determination of the existence and scope of a duty differs from the role the concept plays when the fact-finder is addressing proximate causation." *Marla H.*, 361 S.W.3d at 532 (quoting *Satterfield*, 266 S.W.3d at 366). As such, "[c]ourts evaluating foreseeability in the context of duty must take a more general approach to the likelihood of harm rather than determining the foreseeability of the specific harm suffered by the plaintiff." *Id.* (citations omitted).

not negligent in their supervision even when they were aware of the activity the students were engaged in prior to their injuries. *Id.* at *4; *see King by King v. Kartanson*, 720 S.W.2d 65, 65 (Tenn. Ct. App. 1986); *Cadorrette v. Sumner Cnty. Bd. of Educ.*, No. 01A01-9510-CV-00441, 1996 WL 187586, at *3 (Tenn. Ct. App. Apr. 19, 1996); *McCann v. Coleman*, CA No. 45, 1990 WL 97860, at *2 (Tenn. Ct. App. July 17, 1990). In *Nickelson*, however, the teacher was unaware the students were tugging on the metal ruler. *Id.* As such, the plaintiffs argued that the failure to observe this "tug-of-war" was the omission by which the teacher breached her duty to the plaintiff. *Id.* The Court ultimately concluded that a metal ruler, "while obviously capable of inflicting injury . . . , is not, in and of itself, a dangerous instrumentality and is used routinely in classrooms." *Id.* The Court also disagreed with the plaintiff's assertion concerning the teacher's duty:

> Plaintiffs assert that the classroom teacher was negligent in failing to observe and stop the tug-of-war behavior. Under Plaintiffs' theory, the teacher was required to continuously observe the seventh[-]grade students as they came into her classroom and at all times they were therein. We do not agree that such a duty exists, because, taken to its logical conclusion, it would preclude a teacher from performing any task which required his or her attention elsewhere, e.g., individual conferences with students, reading from a text, or writing on the blackboard.

*Id.* As such, the Court found there was no duty and affirmed the trial court's grant of summary judgment to the defendant. *Id.*

In a subsequent case, a minor sustained an eye injury during recess when a classmate struck him in the eye with a plastic toy hammer. *Santiago v. Cooper*, No. W2003-01882-COA-R3-CV, 2004 WL 1159644, at *1 (Tenn. Ct. App. May 18, 2004). Again, unlike the case at bar, the trial court granted summary judgment for the defendant. *Id.* On appeal, we discussed what is expected of teachers in situations such as the one in our case:

> [T]he Tennessee Supreme Court made clear that teachers and local school districts are not expected to be insurers of their students' safety while at school. *Roberts*, 692 S.W.2d at 870. Instead, the Court held that school teachers must exercise such care as a reasonable and prudent person would exercise under the same or similar circumstances. *Id.* This level of supervision required under this standard of care can vary, depending on the age and experience of the students, their maturity, and the dangers to which they might be exposed. *Id. See also Schorn v. Oak Ridge Schools*, 1989 WL 109475, at *2 (Tenn. Ct. App. June 20, 1989).

Id. at *4. Additionally, "[i]n the context of school teachers, we do not require them to anticipate the countless unexpected student acts that take place each day in our schools." *Id.* (citing *Roberts*, 692 S.W.2d at 871). Rather, we "hold teachers to the duty of protecting

students from reasonably foreseeable dangerous conditions, including the dangerous acts of fellow students." *Id.* (citing *Roberts*, 692 S.W.2d at 871).

The Court in *Santiago* concluded that the injury to the plaintiff's eye was unforeseeable. *Id.* at *5. The Court explained that the plastic toy hammer was "an age-appropriate toy specifically designed for young children at play." *Id.* Furthermore, "an accident of this nature, involving an injury caused by an age-appropriate toy, ha[d] never occurred" at the school before. *Id.* The Court found that "[w]e would be placing an unrealistic burden of foresight upon teachers if we asked them to anticipate every possible injury that could occur while young children play together." *Id.* Therefore, the Court affirmed the trial court's finding that the defendants were not negligent in failing to prevent the injury to the plaintiff's eye, "which was the result of an unforeseeable accident." *Id.*

More recently, this Court decided a case involving a minor who sustained an injury when a chair fell on his finger in his school's lunchroom. *Landry*, 2020 WL 3550052, at *1. The trial court granted summary judgment for the defendant finding that there was insufficient evidence demonstrating a dangerous condition existed and the incident was unforeseeable. *Id.* On appeal, the Court explained that, with respect to the element of duty, it "must first establish that the risk of injury [was] foreseeable . . . ." *Id.* at *5. The Court reiterated that "[t]here is no dispute that a duty is imposed on the [defendant] to exercise ordinary care for the safety of students, including safeguarding them from reasonably foreseeable dangerous conditions, which includes the dangerous acts of fellow students." *Id.* at *5 (citing *Richardson v. Trenton Special Sch. Dist.*, No. W2015-01608-COA-R3-CV, 2016 WL 3595563, at *6 (Tenn. Ct. App. June 27, 2016); *Roberts*, 692 S.W.2d at 871). As for proximate cause, the Court explained that "[f]oreseeability is an essential element of proximate causation, which, in turn, is essential to a negligence claim." *Id.* (citation and footnote omitted).

Ultimately, the Court in *Landry* concluded that the evidence put forth by the plaintiffs "could not lead a rational trier of fact to find that the injury was foreseeable." *Id.* at *6. Moreover, "the mere fact that the chair could fall when it was bumped does not constitute a dangerous or unsafe condition." *Id.* at *5. As such, because the plaintiffs could not prove proximate causation or that the defendant had a duty to safeguard the plaintiff from the specific harm suffered, the Court held that summary judgment was warranted. *Id.*

The decisions in *Nickelson*, *Santiago*, and *Landry* are instructive in this case. Like the metal ruler in *Nickelson*, a mechanical pencil is "obviously capable of inflicting injury," but "is not, in and of itself, a dangerous instrumentality and is used routinely in classrooms." *Nickelson*, 1999 WL 767813, at *4. Moreover, teachers cannot "anticipate the countless unexpected student acts" that may occur at schools. *Santiago*, 2004 WL 1159644, at *4 (citing *Roberts*, 692 S.W.2d at 871). As we further stated, an "unrealistic burden" would be placed on teachers if they had to "anticipate every possible injury that could occur while young children play together." *Id.* at *5. Instead, teachers have a duty

- 7 -

to protect students from "reasonably foreseeable dangerous conditions, including the dangerous acts of fellow students." *Id.* at *4 (citing *Roberts*, 692 S.W.2d at 871).

Here, the teacher stated that he could see the whole classroom from where he was sitting at the time of the incident and made sure the students were sitting where he could see them. However, the teacher did not observe the incident from his desk nor was he aware that the incident had occurred. Plaintiff believed that the teacher's view was obstructed, but he could not say for a fact whether the teacher could see where he was sitting in the classroom. Conversely, his classmate believed that the teacher could see all of the students from where he was sitting. Similar to the facts in *Nickelson*, whether the teacher saw the student flicking the pencil back and forth between her fingers does not mean the teacher should have foreseen the incident and subsequent injury. *Nickelson*, 1999 WL 767813, at *4. A mechanical pencil is not a dangerous instrumentality and is commonplace in the classroom setting. Requiring the teacher to anticipate this incident which was caused by such a routine instrumentality would be placing an "unrealistic burden of foresight" upon him. *Santiago*, 2004 WL 1159644, at *5. As the former director of schools put it, "things happen" even when exercising direct supervision and following pupil-to-teacher ratios. According to Plaintiff, none of the students in the classroom were "running rampant"; they were just sitting there doing their work. Additionally, an incident like this had never happened before in the afterschool program nor the Obion County School System. *See Giggers*, 277 S.W.3d at 365 (explaining that courts may consider, "among other things, the presence or absence of prior similar incidents, and other circumstances" when analyzing foreseeability) (citing *McClung v. Delta Square Ltd.*, 937 S.W.2d 891, 901 (Tenn. 1996)). This was simply an unfortunate, unforeseeable accident.

Since this was not a reasonably foreseeable dangerous condition, we conclude that there was no duty here. *See id.* at *4 (citing *Roberts*, 692 S.W.2d at 871); *see also Giggers*, 277 S.W.3d at 365-66. By concluding that there was no duty, we need not address the other elements of negligence. Based on our conclusion, we reverse the trial court's denial of summary judgment in favor of Obion and remand for entry of an order granting its motion.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the trial court and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant, Obion County School System, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE